GUTHRIE (COBLIDGE v.). See Case No. 3,-185.

GUTHRIE (COOLIDGE v.). See Case No. 3,-185.

## Case No. 5,879.

GUTTA-PERCHA & RUBBER MANUF'G CO. v. GOODYEAR RUBBER CO. et al.

[3 Sawy. 542; 2 Ban. & A. 212.][1]

Circuit Court, D. California. Dec. 16, 1875.

INJUNCTION—PATENT—KNOWLEDGE AGAINST OPINION.

1. On an application for an injunction against the infringement of a patent, the bill should show, either that the validity of the patent has been established in an action at law, or that the right of the complainant under the patent has been recognized and acquiesced in by long unquestioned use and enjoyment, or other equivalent acts.

[Cited in American Bell Tel. Co. v. Southern Tel. Co., 34 Fed. 804; Wirt v. Hicks, 46 Fed. 71.]

2. Where a motion for an injunction against the infringement of a patent rests upon affidavits of dealers in the article, stating their opinion as to its composition, is opposed by counter-affidavits of the manufacturer of the article, who states the composition from his personal knowledge, other things being equal, the statements of the latter are the more reliable, and the injunction will be denied.

In equity.

Stephen H. Phillips and M. A. Wheaton, for complainant.

J. W. Winans, for defendants.

SAWYER, Circuit Judge. I have examined the papers, which are quite voluminous, in this case, and find that the matter upon which the decision is to turn lies in a very small compass.

I do not find it necessary to determine whether there is any conflict between the patents; or the question whether the dead oil of tar is identical with crude carbolic acid. The bill alleges an infringement by selling a certain quantity of a particular hose for the use of the Palace Hotel. The only testimony in the case as to the hose being carbolized hose, made in accordance with the complainant's patent, is the affidavit of Mr. Taylor verifying the bill, and his further affidavit, subsequently filed. What he said upon that point is very brief and not very satisfactory. He simply says that he has been engaged in selling rubber goods for a long time; that he has examined this piece of hose; that it is made with pure carbolic acid, as he judges from the appearance of the hose. He does not profess to be a manufacturer, but only a dealer in the manufactured article. On the contrary, Mr. Chevers, who is the treasurer and manager of the New York Belting and Packing Company, states that he is a manufacturer of hose, and is acquainted with the manufacture of this particular hose, which was made by that company, and knows how it was, in fact, made. He states positively that it is made under two patents of Mayall and Robbins, and in the mode prescribed in Robbins' patent; that the substance used in the manufacture was the dead oil of tar, which was applied in the manner described in Robbins' patents. These are the elder patents, and the use of coal tar and deal oil in the manufacture of rubber goods is mentioned in the plaintiff's own patent, as having been previously known. The specifications state that the applicant was aware that coal tar and dead oil had been used for those purposes before. If known before, it could not be covered by complainant's patent, even if not embraced in defendant's. According to the testimony, Mr. Chevers is in a better position than Mr. Taylor to know how this hose was made. He is a manufacturer himself, and as manager of the company he superintended the manufacture of this particular hose, and he knows all about it. He says it was manufactured in the mode prescribed in the Robbins' patent; that the dead oil of tar was used, and applied as therein specified. It meets, then, the allegation made by Mr. Taylor, which can only rest upon opinion, and which is the only testimony upon the point in favor of the complainant. It completely meets and defeats the case made by the bill and affidavit of complainant, and it is not necessary to determine whether dead oil of tar is crude carbolic acid, or not, as claimed by defendant and denied by complainant, if the hose was manufactured with that substance; for that substance appears to have been, in fact, used under defendant's patents prior to the issuing of the complainant's patent, or to the invention claimed to have been made by the complainant. It meets the whole case on the application for an injunction. It makes no difference whether Mayall's patent covered dead oil of tar or not, if dead oil was in fact used by him or anybody else in the manufacture of hose, prior to complainant's discovery. I would say, also, that the bill does not set out the facts necessary for an injunction. We have to go outside of the bill to the affidavits to determine the long and unquestioned use. There is no allegation that the matter has ever been litigated before, and decided in favor of complainant and no allegation in the bill, that the right of complainant has ever been submitted to, or recognized by, the public. The bill, as an injunction bill, is defective in this particular; but on the other point the testimony of Mr. Chevers is fatal to the injunction. It is more reliable than Taylor's, because he is in a better position than Taylor to know how the hose was made, and what the material used was. It is matter of knowledge with him, and of opinion only with Mr. Taylor, founded upon inspection of the article after its

[1] [Reported by L. S. B. Sawyer. Esq., reprinted in 2 Ban. & A. 212, and here republished by permission.]

manufacture; and he does not appear to be a manufacturer or chemist. The injunction must therefore be denied, and the restraining order dissolved. Of course, the case may turn out to be entirely different on the trial, but this injunction must stand or fall upon the bill and two affidavits; and the affidavit of Mr. Chevers shows that he is the person having the better means of knowledge.